**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————x
:
IN RE SLING MEDIA SLINGBOX         :  Civ. Action No. 1:15-cv-05388-GBD
ADVERTISING LITIGATION             :
                                   :  **MEMORANDUM OF LAW IN SUPPORT**
This Document Relates To:  All Actions  :  **OF SLING MEDIA, INC.'S MOTION TO**
                                   :  **DISMISS**
                                   :
———————————————————————x

# TABLE OF CONTENTS

THE COMPLAINT ................................................................................................................2

LEGAL STANDARDS ........................................................................................................4

ARGUMENT ........................................................................................................................6

I.     THE COMPLAINT DOES NOT ADEQUATELY SHOW PLAINTIFFS' STANDING. ................................................................................................6

II.    PLAINTIFFS' CLAIMS FOR VIOLATION OF CONSUMER PROTECTION LAW ARE GOVERNED BY NEW YORK LAW. ........................7

       A.    The Choice of Law Provision In Sling's Agreement Provides No Basis For Applying California's Consumer Protection Statutes To Plaintiffs' Claims. ...............................................................8

       B.    Under Choice of Law Analysis, New York's Distinctive Consumer Protection Statute, And Not Other States', Governs Plaintiffs' Claims. ...............................................................................9

             1.    GBL § 349 Differs In Material Respect From The Three California Statutes That Plaintiffs Invoke In Their First, Second, and Third Causes of Action................................10

             2.    New York Law Applies Because New York, As The "Locus of the Tort," Has A Greater "Interest" In Having Its Law Applied.............................................................11

       C.    The Claim Asserted As the Fourth Cause of Action Must Likewise Be Decided Under New York Law, And The Claims Under Laws in Jurisdictions Other Than New York Severed And Dismissed.................13

III.   PLAINTIFFS HAVE NOT PLED ESSENTIAL FACTS TO SUPPORT A PLAUSIBLE INFERENCE THAT SLING IS LIABLE TO THEM UNDER GBL § 349...............................................................................15

       A.    Plaintiffs Ignore The Requirement That Their Complaint State Facts That Inform The Defendant Of The Misrepresentations With Which It Is Charged And That Support A Plausible Inference That Defendant Made Any Such Misrepresentations. ..........................15

       B.    Plaintiffs' Claim, If Based On Sling's Alleged Omission To Disclose That It "Would" Broadcast Sling Ads, Rather Than On False Statements Sling Made, Fails to Allege Facts Establishing That Plaintiffs Were Subjected To Materially Deceptive Conduct. ............17

             1.    Plaintiffs Fail To Plead That Sling's Omission Concerned a Fact That Was "Known" During The Relevant Timeframe.............17

             2.    Plaintiffs Fail To Plead Facts Showing The Materiality Of The Allegedly Omitted Information To A Reasonable Consumer. ....................................................................18

C.      Plaintiffs Do Not Plead Facts Showing Causation of Damage....................21

D.      Slingbox Owners' Irritation or Surprise (If Any) At Being Exposed To The Sling Ads Is Not Cognizable Injury Under GBL § 349. .................23

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011)..............................................................5, 6, 7

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
    802 F.Supp.2d 1070 (N.D. Cal. 2011) ......................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................4, 18, 22

*Bank of the West v. Superior Court*,
    2 Cal.4th 1254 (1992) ...............................................................................10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................4

*Brady v. Basic Research, L.L.C.*,
    101 F.Supp.3d 217 (E.D.N.Y. Mar. 31, 2015).................................. *passim*

*Californians for Disability Rights v. Mervyn's LLC*,
    39 Cal.4th 223 (2006) ...............................................................................10

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal.4th 163 (1999) ...............................................................................10

*Cent. States Se. & Sw. Areas Health & Welfare Fund*
    *v. Merck-Medco Managed Care, L.L.C.*,
    433 F.3d 181 (2d Cir. 2005).........................................................................5

*Chiste v. Hotels.com L.P.*,
    756 F.Supp.2d 382 (S.D.N.Y. 2010)...................................................15, 20

*Davison v. Kia Motors America, Inc.*,
    2015 WL 3970502 (C.D. Cal. June 29, 2015) ....................................12, 13

*Dimond v. Darden Restaurants, Inc.*,
    2014 WL 3377105 (S.D.N.Y. July 9, 2014) ...............................19, 21, 24

*In re Ditropan XL Antitrust Litig.*,
    529 F.Supp.2d 1098 (N.D.Cal. 2007) .......................................................14

*Douyon v. N.Y. Medical Health Care, P.C.*,
    894 F.Supp.2d 245 (E.D.N.Y. 2012) ........................................................23

*In re Elevator Antitrust Litig.*,
502 F.3d 47 (2d Cir. 2007)................................................................................................4

*Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.*,
414 F.3d 325 (2d Cir. 2005)................................................................................8, 9, 10, 11

*Frenzel v. AliphCom*,
76 F.Supp.3d 999 (N.D. Cal. 2014) ..................................................................9, 12, 13, 25

*Gale v. International Business Machines Corp.*,
781 N.Y.S.2d 45 (N.Y. Ct. App. 2004) ..........................................................................22, 23

*Goldberg v. Manhattan Ford-Lincoln Mercury, Inc.*,
492 N.Y.S.2d 318 (N.Y. Sup. Ct. 1985) ....................................................................19, 21, 24

*Goshen v. Mutual Life Ins. Co. of N. Y.*,
98 N.Y.2d 314 (N.Y. 2002) ..........................................................................................12, 15

*In re Grand Theft Auto Video Game Consumer Litig.*,
251 F.R.D. 139 (S.D.N.Y. 2008) ....................................................................................11, 13

*In re Graphics Processing Units Antitrust Litig.*,
527 F.Supp.2d 1011 (N.D.Cal. 2007) ..................................................................................14

*Hammond v. Bank of NY Mellon Corp.*,
2010 WL 2643307 (S.D.N.Y. 2010)......................................................................................24

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009)....................................................................................................18

*Hutson v. Rexall Sundown, Inc.*,
837 So.2d 1090 (Fla. Dist. Ct. App. 2003) .................................................................. *passim*

*Kaufman v. Sirius XM Radio, Inc.*
751 F.Supp.2d 681 (S.D.N.Y. 2010), *aff'd*, 474 Fed.Appx. 5 (2d Cir. 2012).........................15

*Krock v. Lipsay*,
97 F.3d 640 (2d Cir. 1996)......................................................................................8, 9, 11

*Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*,
507 U.S. 163 (1993)...............................................................................................................17

*Leider v. Ralfe*,
387 F.Supp.2d 283 (S.D.N.Y. 2005).....................................................................................11

*Mazza v. American Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ................................................................................................12

*Meyer v. Sprint Spectrum, L.P.*,
    45 Cal.4th 634 (2009) ...................................................................................25

*Mosely v. Vitalize Labs, LLC*,
    2015 WL 5022635 (E.D.N.Y. Aug. 24, 2015) .................................................13, 14

*Mountz v. Global Vision Products, Inc.*,
    770 N.Y.S.2d 603 (N.Y. Sup. Ct. 2003) .........................................................15

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ....................................................................................5

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    85 N.Y.2d 20 (N.Y. 1995) ...........................................................................19, 20

*Polzer v. TRW, Inc.*,
    682 N.Y.S.2d 194 (N.Y. Ct. App. 1998) ........................................................19, 24

*Rebman v. Follett Higher Educ. Group, Inc.*,
    248 F.R.D. 624, 631-32 (M.D. Fla. 2008) ......................................................13

*Rollins, Inc. v. Butland*,
    951 So.2d 860(Fla. Dist. Ct. App. 2006) .......................................................25

*Schlessinger v. Valspar Corp.*,
    21 N.Y.3d 166 (N.Y. 2013) ..........................................................................11

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F.Supp.2d 942 (S.D.Cal. 2012).............................................................8, 9

*People ex. rel. Spitzer v. Direct Revenue, LLC*,
    2008 WL 1849855 (N.Y. Sup. Ct. Mar. 12, 2008) ..........................................15

*Sutherland v. Remax 2000*,
    2008 WL 3307201 (N.Y. Sup. Ct. Aug. 7, 2008).............................................16, 23

*Tomassini v. FCA U.S., LLC*,
    2015 WL 3868343 (N.D.N.Y. June 23, 2015).................................................17

*In re Vivendi Universal, S.A. Sec. Litig*,
    605 F.Supp.2d 570 (S.D.N.Y. 2009)..............................................................7

*W.R. Huff Asset Mgmt Co, LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008).........................................................................5, 7

*Weinstein v. eBay*,
    2011 WL 2555861 (S.D.N.Y. June 29, 2011) .................................................20, 21

*Wood v. Maguire Auto, LLC*,
    2011 WL 4478485 (N.D.N.Y. Sept. 26, 2011) .................................................................10, 11

*Woods v. Maytag Co.*,
    2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) ................................................................. *passim*

*Zaycer v. Sturm Foods, Inc.*,
    896 F.Supp.2d 399 (D.Md. 2012) .................................................................................13, 14

**Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq.* .............................................................................. *passim*

Cal. Bus. & Prof. Code § 17500 *et seq.* .............................................................................. *passim*

Cal. Civ. Code § 1770 ........................................................................................................... *passim*

N.Y. General Business Law § 349 ........................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ...................................................................................................1, 2, 3, 5

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... *passim*

Defendant Sling Media ("Sling") hereby moves to dismiss this putative nationwide class action pursuant to Federal Rules of Civil Procedure 12(b)(1), and 12(b)(6). The Consolidated Complaint (hereinafter "CC") alleges that Sling wronged purchasers of Slingboxes by not informing them that Sling might display advertising to customers while using their Slingboxes, and by making unspecified misrepresentations about Slingboxes. However, as set forth herein, the plaintiffs have failed to allege the facts necessary to assert viable consumer protection claims.

First, plaintiffs incorrectly invoke California (and other jurisdictions') consumer protection statutes, despite clear admissions by all plaintiffs that they purchased their Slingboxes in New York while each was living in New York. CC ¶ 2. Under governing choice of law rules, New York's consumer protection law (not other jurisdictions') governs all plaintiffs' claims.

Second, plaintiffs plead no facts affirmatively demonstrating their individual standing to assert their claims, as they must. They do not plead that their own purchases were the result of false statements that *they* were exposed to, nor do they allege any facts suggesting that the allegedly "omitted" fact (*i.e.*, Sling's "plan" to begin advertising) even existed, or was known to Sling, when plaintiffs purchased their Slingboxes. With no allegations suggesting that the complained-of acts and practices caused plaintiffs themselves any concrete harm, they have no standing to assert these putative class claims.

Third, plaintiffs fail to plead facts supporting the elements of a viable statutory consumer deception claim. They plead no facts showing conduct by Sling that was deceptive, much less deceptive "in a material respect," as required. They fail altogether to identify any affirmative misrepresentations by Sling that its customers would have an "ad-free" experience, and they plead no facts suggesting Sling had any specific intention or plan to display advertising via Slingboxes when they themselves bought their Slingboxes. The absence of any facts demonstrating the materiality of the supposed misconduct is also glaring. The CC says nothing about the duration or type of Sling advertising that could plausibly support an inference that any alleged omission was "material." And it likewise says nothing suggesting that plaintiffs or other consumers suffer actual, compensable harm as a result of the alleged "deception." The claims, as

pled, appear to be based on nothing more than irritation, frustration, or disappointed subjective expectations, which are not actionable.

These pleading deficiencies, examined independently or in combination, mean that plaintiffs have not come close to alleging their claims for relief, and all of their claims should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).

## THE COMPLAINT

Plaintiffs are two current New York residents, and one former New York resident who now lives in Florida. Each allegedly purchased a Slingbox in New York while residing in New York. CC ¶¶ 2, 5-7. They seek damages and injunctive relief for themselves and a putative nationwide class of persons who purchased a Slingbox before March 17, 2015. CC ¶¶ 17-18.

Plaintiffs complain that, since March 2015, they and all other Slingbox owners trying to watch third-party programming using their Slingboxes see advertising that has been added by Sling (hereinafter, "Sling Ads"). CC ¶¶ 3-4, 5-7, 12.) Sling allegedly began the Sling Ads "quietly," without disclosure to Sling's "installed user base," and without seeking those existing customers' permission. *Id.* at 12, 14. In the "decades" preceding 2014, Slingbox owners could (allegedly) watch third party programming on remote screens and devices utilizing their Slingboxes without viewing *any* Sling Ads. *Id.* at 12.

Beyond being allegedly exposed to some Sling Ads of unspecified duration, it is unclear what alleged injury plaintiffs personally experienced, and whether plaintiffs are in a group of subscribers injured by allegedly "deceptive" conduct at all. The lone allegation that Sling's alleged "deception" had any concrete consequences is the highly generalized claim in Paragraph 16 that plaintiffs and other putative class members would not have purchased Slingboxes at all, or would not have paid as much for them, if they had known of Sling's "intention" to display Sling Ads. CC ¶ 16. But plaintiffs studiously avoid alleging any facts indicating that they belong to any class of purchasers to whom Sling failed to reveal any "then-known" fact. They never say when, in the "decades" that Slingboxes were allegedly being sold, they purchased their own Slingboxes, or when, in those "decades," Sling formed its alleged "plans" to begin

displaying Sling Ads.  CC ¶¶ 5, 6, 7.  They do not even say, *generally*, that they purchased *after* Sling decided to begin running Sling Ads but *before* that decision was public.  *Id.*  Whether their own purchases could have resulted from an omission by Sling to disclose a "known" fact or "plan" to potential purchasers is thus left entirely to surmise.  *See* CC ¶ 15.

They also do not bother to allege, even generally, that *they* purchased as a result of any misleading misrepresentations.  CC ¶¶ 5, 6, 7.  They never say they were personally exposed to any Sling advertising or promotions or that they ever looked at Sling's website; they avoid describing *any* misleading statements by Sling; and they provide *no* examples of any statements or advertising by Sling on the subject of whether Sling would, or would not, add its own advertising to the mix of content that its customers could view via their Slingboxes.[1]

Plaintiffs do complain that viewers are "forced" to watch some Sling Ads.  CC ¶¶ 11, 12, 30.  But they never describe the Sling Ads, or how long they appear on the screen, or even where they appear on screen.  CC ¶¶ 3-8, 12-13, 16-17.  From all that the Complaint says, the Sling Ads appear for only a few seconds, or can be "minimized" with a click of a button or mouse.  Nothing in the Complaint, then, plausibly suggests that the Sling Ads materially distract from third-party content viewable on plaintiffs' Slingboxes, or cause any form of actual harm.

On the basis of their scant, generalized allegations, plaintiffs sue Sling, in their first three counts, for violating three California consumer protection statutes: its Unfair Competition Law ("UCL"), prohibiting unfair, unlawful, and fraudulent business practices (Cal. Bus. & Prof. Code §17200 *et seq*.), its False Advertising Law ("FAL"), prohibiting false advertising (Cal. Bus. & Prof. Code §17500 *et seq*.), and provisions of its Consumer Legal Remedies Act ("CLRA") that likewise prohibit specific categories of false advertising (Cal. Civ. Code § 1770).  CC ¶¶ 26–45.

---

[1] Although the Complaint vaguely refers to "misrepresentations," "marketing materials," "promotional efforts," "advertising," "product manuals," and product descriptions in a general way (*see*, *e.g.*, CC ¶¶ 21, 27, 29, 30, 35, 39(d), 45), and makes reference to Sling's current website (CC ¶¶ 8-9), it provides *no* examples of any statement by Sling on the subject of whether it would or would not cause additional advertising to be displayed to Slingbox users, and it provides no clue as to what (if any) affirmative representations plaintiffs themselves saw or were exposed to.

Plaintiffs' invocation of those California statutes rests on allegations that Sling's principal offices are in California, that it "largely" disseminated unspecified marketing content from there, and that its licensing agreement states that that agreement will be governed by and construed under California law.  CC ¶¶ 27–28. They otherwise plead no connection to California, including that they themselves saw any advertisements created in or disseminated from California.

In the alternative, they assert "causes of action" (grouped together in and labeled as their Fourth Cause of Action) for violations of the consumer protection statutes of fifty *other* jurisdictions, including (but not limited to) New York's General Business Law section 349 (hereinafter "GBL § 349").  CC ¶¶ 47-96.  Plaintiffs plead no facts showing any relationship between their personal claims and *any* of the dozens of jurisdictions they list in their fourth cause of action, with the obvious exception of New York (where each lived and where each allegedly purchased his Slingbox).

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Facial plausibility" requires "factual content" supporting the reasonable inference of the defendant's liability for the claimed misconduct; tendering "naked assertion[s]" devoid of "further factual enhancement" will not suffice.  *Id; quoting and citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  After *Twombly* and *Iqbal*, plaintiffs, to state a claim for relief, must plead enough facts to "nudge" their claims across the line from merely conceivable to plausible.  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly, supra*).  And, while well-pled facts are taken as true, mere conclusions, unsupported by facts, can be ignored.  *Id.*

In consumer deception cases, these pleading standards require dismissal of vague claims that only generally reference false advertisements or statements, without identifying any of them, that fail to state that plaintiffs themselves were exposed to and suffered concrete harm resulting from a defendant's allegedly deceptive practices, or that fail to support an inference that the

complained-of conduct was "materially" deceptive. *See, e.g.*, *Woods v. Maytag Co.*, 2010 WL 4314313, *15 (E.D.N.Y. Nov. 2, 2010) (dismissing consumer deception claim for failure to identify any of alleged false statements or any facts supporting inference that defendant "knew" of undisclosed dangerous defect); *Brady v. Basic Research, L.L.C.*, 101 F.Supp.3d 217, 236 (E.D.N.Y. Mar. 31, 2015) (granting dismissal of claims based on alleged misrepresentations or omissions about product's safety where product's label said nothing about product's safety).

A complaint that fails sufficiently to allege that plaintiffs were personally harmed by the defendants' alleged misconduct also presents standing problems that may justify dismissal under Rule 12(b)(1). Because standing is a threshold issue, a complaint must do more than merely suggest the possibility of plaintiffs' personal standing, it must allege facts that "affirmatively and plausibly suggest that [the plaintiffs] ha[ve] standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). Standing requires that there be plausible causal nexus between the "alleged actions of the defendant" and a "concrete particularized harm" to one of plaintiffs' "legally protected interest[s]" (that is, "causation" and "injury in fact"); those are "irreducible elements" of a plaintiff's standing to sue. *W.R. Huff Asset Mgmt Co, LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008) (describing "irreducible elements" of "standing to sue" under Article III). A plaintiff who was not himself subjected to or injured by supposed misconduct lacks such standing. He cannot "piggyback" on the claims of putative class members to assert claims that *they* might have. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (""[I]f none of the named plaintiffs purporting to represent a class establishes the requisite case and controversy with the defendant[], none may seek relief on behalf of himself or any other member of the class.'") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

As will be shown below, Plaintiffs' exceptionally vague complaint does not satisfy the basic requirements for pleading plausible claims for relief against Sling, and it fails affirmatively to plead facts showing their own standing to bring these claims. The complaint must therefore be dismissed pursuant to 12(b)(6) and 12(b)(1).

# ARGUMENT

## I. THE COMPLAINT DOES NOT ADEQUATELY SHOW PLAINTIFFS' STANDING.

Plaintiffs completely fail to plead *facts* showing their personal standing to bring consumer deception claims against Sling. As noted above, they do not say that *they* saw or were exposed to any false or misleading advertising or statements by Sling. Nothing, therefore, suggests that they themselves suffered any concrete injury as a result of something Sling *said*. From all that appears in the complaint, plaintiffs never saw any of Sling's advertisements, never looked at Sling's website, and never read any Sling product descriptions prior to purchasing their Slingboxes. Their complaint thus utterly fails to show any causal nexus between any false or misleading statement by Sling, and some injury to plaintiffs. *Brady*, 101 F.Supp.3d at 227 ("essence" of standing is "presence of 'injury in fact' suffered by the plaintiff as a result of the defendant's actions").[2]

Plaintiffs likewise fail to allege facts indicating that they themselves have standing to pursue an "omission"-based claim. Even if this court accepts as true that Sling did not affirmatively advise prospective purchasers that Sling Ads "would" be displayed to them, and accepts, for purposes of its jurisdictional analysis, that Sling had some legally-enforceable obligation to disclose that "fact" to potential purchasers, the Complaint fails to suggest any nexus between any failure by Sling to reveal a known fact and plaintiffs' own Slingbox purchases. *Id.* at *227, 229 (dismissal required where no causal nexus between defendant's endorsement and plaintiff's purchase); *Amidax*, 671 F.3d at 146 (dismissal required where plaintiff provided no factual support plausibly showing plaintiff's own data was affected and injury merely speculative).

---

[2] The only actual statements by Sling about its Slingboxes referenced anywhere in the Complaint are partial quotes from Sling's *current* website which say nothing about advertising (CC ¶¶ 8-9). Plaintiffs, moreover, make no claim that they ever looked at Sling's website (or any other written statements by Sling), that they heard or saw any Sling commercials, or that they otherwise heard misleading statements Sling made about Slingboxes before they purchased. From all that the Complaint alleges, plaintiffs themselves purchased based on recommendations by friends, family members, or Consumer Reports, and not because of anything Sling itself said.

Plaintiffs allege that Sling was selling Slingboxes for "decades" without airing Sling Ads. (CC ¶ 12). They do not say when, in those "decades," Sling formed its alleged "plan" to launch those ads, and when they purchased their own Slingboxes. They never even generally allege that they themselves purchased their Slingboxes *after* Sling's plan to launch the Sling Ads was formed. From the complaint, plaintiffs may have purchased their boxes months or years *before* Sling conceived of any plan to display Sling Ads via the boxes. As such, they themselves would have no standing to complain of Sling's alleged omission. *Brady*, 101 F.Supp.3d at 229 (dismissing, on standing grounds, claim by plaintiff who purchased before defendant began endorsing weight loss drug).

The mere "possibility" of plaintiffs' standing is not enough. *Amidax*, 671 F.3d at 146-48. The causal nexus between the defendant's alleged misconduct and plaintiffs own alleged injuries is a fundamental requisite of standing to sue under Article III of the Constitution. *In re Vivendi Universal, S.A. Sec. Litig*, 605 F.Supp.2d 570, 574 (S.D.N.Y. 2009), citing and quoting *W.R. Huff*, 549 F.3d at 106-07. As such, it must be pled affirmatively and factually, so as to "plausibly suggest that [plaintiff] has standing to sue." *Brady*, 101 F.Supp.3d at 227 (citing and quoting *Amidax*, 671 F.3d at 145).

Here, because plaintiffs fail to allege any facts suggesting that *they themselves* purchased *after* Sling formed its plan to run the Sling Ads, or suggesting that they were *themselves* exposed to some misleading advertisements or product descriptions promulgated by Sling, they have not alleged *any* facts "plausibly" establishing their standing. *See Brady*, 101 F.Supp.3d at 229; *Amidax*, 671 F.3d at 146-148.

## II.    PLAINTIFFS' CLAIMS FOR VIOLATION OF CONSUMER PROTECTION LAW ARE GOVERNED BY NEW YORK LAW.

As the failure by plaintiffs to affirmatively plead facts plausibly showing their standing merits dismissal under Rule 12(b)(1), this court need not decide which state's law govern their claims. If this court nevertheless decides to address the adequacy of plaintiffs' pleading of their four causes of action, then the second threshold question this Complaint presents is whether

California's consumer protection statutes govern these claims, or whether New York's (or some other state's) do.

As will be shown below, New York law governs plaintiffs' claims, because plaintiffs' transactions and alleged injuries occurred in New York, not elsewhere, because no other state has a stronger interest in their claims, and because the parties' contract does *not* specify that California law will govern these claims. Accordingly, plaintiffs' purported claims under California law (pled as their First, Second, and Third causes of action) should be dismissed, and their claims under forty-nine other jurisdictions' consumer protection statutes (combined in a single, omnibus Fourth Cause of Action) should be severed and dismissed as well.

A.    **The Choice of Law Provision In Sling's Agreement Provides No Basis For Applying California's Consumer Protection Statutes To Plaintiffs' Claims.**

Plaintiffs, all of whom allegedly bought their Slingboxes in New York, while residing in New York, assert that California law governs their claims. CC ¶ 47. To support that assertion, they note that Sling's end-user licensing agreement states that *that agreement* will be governed by and construed under California law. CC. ¶ 28. But that choice of law provision provides no basis for this court to apply California's statutory law to claims, like these, that do not arise *from that contract. Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.*, 414 F.3d 325, 335 (2d Cir. 2005) ("Under New York law, . . . tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contact); *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (choice of law provision in loan documents did not apply to party's non-contractual fraud claim as it did not contain language sufficiently broad to encompass claims not arising from the agreement); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig*., 903 F.Supp.2d 942, 964-65 (S.D.Cal. 2012) (rejecting claim that plaintiffs' statutory consumer deception claims allegedly arising under California's consumer protection statutes were governed by the choice of law provision in defendants' "terms of service" agreement, where, by its own terms, the agreement's provisions

"dictate[d] only that California law applies to the construction and interpretation of the contract" and did not purport to govern "claims asserted under California consumer protection statutes.").

The contractual provision plaintiffs quote in their Complaint is indistinguishable from that examined in *Finance One, Krock,* and *Sony Gaming Networks, supra.* It contains *no* indication that the parties intended that California's consumer protection laws would govern consumer protection claims, or any kinds of claims not arising under the agreement itself. Plaintiffs' reference to the parties' contractual choice of law provision is thus unavailing and irrelevant.

**B.** **Under Choice of Law Analysis, New York's Distinctive Consumer Protection Statute, And Not Other States', Governs Plaintiffs' Claims.**

Plaintiffs do not claim to have ever resided in California or even visited there. They allege, though, that Sling is headquartered (although not incorporated) in California and that (unspecified) product promotions "largely" emanated from that state. CC ¶¶ 8, 27. These facts, too, are clearly insufficient to justify the application of California consumer protection law, rather than New York law, to plaintiffs' claims. *See, e.g.*, *Frenzel v. AliphCom*, 76 F.Supp.3d 999,1007-10 (N.D. Cal. 2014) (dismissing consumer deception claims asserted under the same California consumer protection statutes plaintiffs invoke here, where (a) the putative class representative was a resident of a foreign state and did not plead that he purchased his fitness tracking watch in California, and (b) the parties' contractual choice of law provision only specified that California law would govern the parties' *agreement*, as opposed to potential consumer protection claims). Under New York's choice of law rules, if (as is the case here), the laws of the two jurisdictions materially differ, and the "locus of the tort" (that is, the place where the alleged "deception" of plaintiffs occurred) was New York, and not California, then New York's law, and not California's, governs these claims.

1. **GBL § 349 Differs In Material Respect From The Three California Statutes That Plaintiffs Invoke In Their First, Second, and Third Causes of Action.**

The first step in a choice of law analysis is for the court to determine whether there are substantive differences between the laws of two (or more) jurisdictions having a relationship of some kind to the parties or their dispute; otherwise, choice of law analysis is unnecessary. *Finance One*, 414 F.3d at 331. The answer here is clearly yes. The three California statutes plaintiff invoke differ in material respects from the New York counterpart plaintiffs invoke in their alternative Fourth Cause of Action (GBL § 349).

First, the remedies afforded by GBL § 349 (damages, treble damages for intentional deception, and a minimum of $50 for a successful plaintiff) differ substantially from those afforded by any of the three California statutes. California's UCL and FAL do not permit recovery of damages at all, much less treble damages or some minimum statutory amount; they allow only equitable relief. *Californians for Disability Rights v. Mervyn's LLC*, 39 Cal.4th 223, 232 (2006); *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1266 (1992). California's CLRA does allow damages, but the only minimum recovery it provides is for a successful *class*, in the minimum amount of $1000, and not the $50 for any plaintiff allowed under GBL § 349. Cal. Civ. C. § 1780(a)(1). These and other significant differences in the remedies offered by the competing schemes, standing alone, necessitate choice of law analysis. *See, e.g.*, *Wood v. Maguire Auto, LLC*, 2011 WL 4478485, *4-5 (N.D.N.Y. Sept. 26, 2011) (difference in amount of damage recoverable under Illinois's and New York's consumer protection statutes presented true conflict necessitating that court analyze states' interests in enforcement of their laws and choose the law of the jurisdiction with the greatest interest in the dispute).

The two states also differ in the breadth and *type* of claims they permit plaintiffs to bring. A plaintiff suing under California's UCL can sue for "unlawful" and "unfair" practices even in the absence of "deceptive" conduct aimed at consumers, including for violations of antitrust and wage and hour laws, or for "unfair" practices that undermine fundamental policies reflected in such other laws. *See, e.g.*, *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20

Cal.4th 163, 179-187 (1999). In contrast, New York's GBL § 349 prohibits only *deceptive* business practices aimed at the *consuming public.* Conduct that is merely "unlawful" under other laws, but that is not deceptive, is not actionable under GBL § 349. *Schlessinger v. Valspar Corp.*, 21 N.Y.3d 166, 172 (N.Y. 2013) ("unlawfulness" not sufficient; deception required); *Leider v. Ralfe*, 387 F.Supp.2d 283, 294-95 (S.D.N.Y. 2005) ("deception" required under GBL § 349; "[m]ere anticompetitive conduct alone will not suffice"). This distinction is one that makes a difference in this case, as plaintiffs expressly complain, in their First Cause of Action, that Sling's conduct is "unlawful" and "unfair" (and *not* just "deceptive"). Those "non-deception" claims are at least potentially cognizable, even in the absence of a finding that *deceptive* conduct caused plaintiffs' alleged injuries, under California's broad statute, but they are not cognizable under GBL § 349. *Id.*

> **2.** **New York Law Applies Because New York, As The "Locus of the Tort," Has A Greater "Interest" In Having Its Law Applied.**

Because the New York and California statutes do clearly differ in ways that may make a difference to plaintiffs' recovery, this court must use "interest analysis" to determine which jurisdiction has "the greatest concern with the specific issue raised in the litigation." *Finance One,* 414 F.3d at 331-337. Where, as here, the action does not arise from a contract, but from allegations of tortious behavior, then the "locus of the tort" is the critical determination. *Krock,* 97 F.3d at 335.

Fortunately, that determination is not at all complicated in this case. All three plaintiffs lived in New York when they purchased their Slingboxes, and all of them purchased their Slingboxes in New York. The "locus of the tort" is thus clear. *See, e.g., Wood,* 2011 WL 4478485, *6 (under New York's approach to choosing between conflicting state laws in cases involving fraudulent conduct, New York's GBL § 349, and not Illinois's Consumer Protection Act, governed a New York resident's claims against an Illinois company where the New York resident heard the alleged misrepresentation about the used car in New York and where the purchase transaction occurred in New York); *In re Grand Theft Auto Video Game Consumer*

*Litig.*, 251 F.R.D. 139, 149-150 (S.D.N.Y. 2008) (under New York's interest analysis approach, the law of the state in which a consumer purchased his copy of the game governs that consumer's claims, citing *Goshen v. Mutual Life Ins. Co. of N. Y.*, 98 N.Y.2d 314, 325-26 (N.Y. 2002)).

Not surprisingly, federal courts in California would decide this question exactly the same way. When a resident of another state attempts to sue under California's UCL, FAL, or CLRA, federal courts in California find that the consumer laws of the state where that non-resident resided and was injured apply, *not* the law of the state where the defendant was headquartered or where its corporate decisions were arguably made, because the consumer's home state has the greater "interest" in the having its laws applied in consumer protection actions. *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F.Supp.2d 1070, 1076 (N.D. Cal. 2011) (dismissing CLRA, UCL, and FAL claims by non-residents allegedly injured outside of California by California-headquartered company's alleged acts of consumer deception); *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 593,594 (9th Cir. 2012) (reversing order certifying nationwide class of consumers asserting UCL and CLRA claims, as California's interest in regulating behavior of business headquartered in its state is "attenuated" compared to the stronger interest of the states where class members, including the named plaintiffs, resided and were deceived); *Frenzel*, 76 F.Supp.3d at 1007-10 (dismissing, under Rule 12(b)(6), non-resident's California-law UCL, CLRA, and FAA claims, made on his own behalf and on behalf of putative nationwide class, where plaintiff did not purchase fitness tracking wristband in California; citing numerous other decisions doing the same).[3] Plaintiffs' claims under the California statutes, alleged as their first three Causes of Action, should be dismissed. *Id.*; *Davison v. Kia Motors America, Inc.*, 2015 WL 3970502, *2-3 (C.D. Cal. June 29, 2015) (dismissing putative nationwide class's claims asserted under California law with prejudice).

---

[3] Florida, likewise, follows the rule that the law of the state where the purchase occurred, *not* of the state where defendant conducted its business, governs consumers' statutory consumer deception claims. *Hutson v. Rexall Sundown, Inc.*, 837 So.2d 1090, 1094 (Fla. Dist. Ct. App. 2003). Plaintiffs, then have no viable claim that California or Florida would claim a greater interest in having their laws applied to plaintiffs' claims.

**C. The Claim Asserted As the Fourth Cause of Action Must Likewise Be Decided Under New York Law, And The Claims Under Laws in Jurisdictions Other Than New York Severed And Dismissed.**

Plaintiffs' attempt, in the alternative, to bring fifty other causes of action under the consumer protection statutes of fifty other jurisdictions in their Fourth Cause of Action fares even worse than their attempts to assert claims under California's statutes. The CC identifies *no* connection whatsoever between plaintiffs' own transactions and any of those other states (other than New York), and presents *no* reason why any such other states would have a greater interest in seeing its laws applied to plaintiffs' claims than New York clearly does. *See, e.g.*, *Mosely v. Vitalize Labs, LLC*, 2015 WL 5022635, *8 (E.D.N.Y. Aug. 24, 2015) (dismissing claims on behalf of putative nationwide class where consumer attempted to invoke other states' law because "defendants' position" that consumers could only bring claims under their own states' laws enjoyed "overwhelming support in the courts of this Circuit and others.") (internal citations omitted); *Grand Theft Auto*, 251 F.R.D. at 149 (state where consumer purchased has greatest interest in application of its law); *Davison*, 2015 WL 3970502 (dismissing nationwide class claims with prejudice as class would include members who purchased in other states); *Frenzel*, 76 F.Supp.3d at 1007-10 (granting dismissal of claims asserted by Missouri resident under California's UCL, CLRA, and FAL on behalf of himself and putative nationwide class against company headquartered in California where plaintiff himself admittedly did not purchase his fitness-tracking wristband in California, and no other named plaintiff had claims under those statutes); *Rebman v. Follett Higher Educ. Group, Inc.*, 248 F.R.D. 624, 631-32 (M.D. Fla. 2008) (Florida plaintiffs could not bring claims to represent persons who purchased in other states; Florida's statute applies to sales in Florida; other states' statutes apply to sales occurring in other states, citing *Hutson*, 837 So.2d at 1094.).[4]

---

[4] Some courts have identified this as a "standing" issue, and not merely a question of whether a plaintiff can state a cognizable claim for relief under another state's consumer protection laws (as opposed to his own). *See, e.g., Mosely*, 2015 WL 5022635, *8-9 (invoking lack of standing under Article III as grounds for dismissal); *Zaycer v. Sturm Foods, Inc.*, 896 F.Supp.2d 399, 406 (D.Md. 2012) (dismissing claims of Maryland resident invoking New Jersey, New York, Pennsylvania, and West Virginia consumer protection laws for lack of Article III standing; (footnote continued)

As plaintiffs themselves clearly have no claims based on those other states' laws themselves, they cannot "piggyback" on the rights of putative class members to bring claims under other states' laws. They can only assert claims that would potentially award *them* relief. *Zaycer*, 896 F.Supp.2d at 399 (dismissing claims of Maryland resident purportedly arising under New Jersey, New York, Pennsylvania, and West Virginia laws prohibiting consumer deception on ground that Maryland resident lacked personal standing to assert those claims).

Here, plaintiffs' claims, as previously shown, lie under GBL § 349, and not some other state's law, as the "tort" occurred in New York.[5] Accordingly, their claims for relief for violations of other jurisdictions' laws (enumerated in paragraphs 43 – 70 and 72-89) should be severed and dismissed. *In re Ditropan XL Antitrust Litig.,* 529 F.Supp.2d 1098, 1106-07 (N.D.Cal. 2007) ("[A]t least one named plaintiff must have standing with respect to each claim the class representatives seek to bring"; dismissing claims under laws of states where no named plaintiff resided, and rejecting argument that determination of standing was "premature prior to class certification."); *In re Graphics Processing Units Antitrust Litig.*, 527 F.Supp.2d 1011, 1026-27 (N.D.Cal. 2007) (granting motion to dismiss claims brought under consumer protection and antitrust laws of states where no named plaintiff resided); *Mosely,* 2015 WL 5022635, *8 (granting dismissal of consumer claims by California residents for violation of New York and New Jersey laws where the named plaintiffs only purchased the products in their home state, citing "overwhelming support in the courts of this Circuit" for dismissal of such claims).[6]

---

because plaintiff was the only named plaintiff, her injuries all arose from her single purchase of the product in Maryland, and the law does not allow a plaintiff to "piggyback on the injuries of the unnamed class members).). Whether this court decides this as a "standing" issue, or a "choice of law" issue, the result is the same: plaintiffs obviously cannot personally assert claims under the laws of states with no relationship to their own dispute with Sling.

[5] This applies to Mr. Langenohl – who alleges he currently lives in Florida – as well as to the two other plaintiffs. As he allegedly bought his Slingbox in New York, while living in New York, he must bring his claim under New York law, not Florida's. *Rebman*, 248 F.R.D. at 631-32; *Hutson*, 837 So.2d at 1094 ("[t]he alleged wrong was committed, and the damage done, at the site of the sale of appellees' products; that is, in the various states where members of the purported class made their purchases.").

[6] Plaintiffs' hope to represent a "nationwide" class (CC ¶¶ 3, 16, 17) is also unavailing. The only claims plaintiffs *personally* possess are potential claims under New York law, and New York's
(footnote continued)

## III. PLAINTIFFS HAVE NOT PLED ESSENTIAL FACTS TO SUPPORT A PLAUSIBLE INFERENCE THAT SLING IS LIABLE TO THEM UNDER GBL § 349.

As previously noted, plaintiffs' Complaint is so devoid of factual support for a claim that plaintiffs' own Slingbox purchase was caused "in fact" by allegedly wrongful conduct by Sling that they have not even sufficiently pled their *standing*, under Article III, to bring any consumer deception claims. But, even if this court were to determine that plaintiffs' minimalist allegations that they each purchased Slingboxes (at some unspecified time) suffices for *jurisdictional* purposes, it should nevertheless find their pleading inadequate to survive Sling's Rule 12(b)(6) motion, as they have not pled facts necessary to support their broad accusations of deceptive conduct, materiality, causation, or actual damage.

### A. Plaintiffs Ignore The Requirement That Their Complaint State Facts That Inform The Defendant Of The Misrepresentations With Which It Is Charged And That Support A Plausible Inference That Defendant Made Any Such Misrepresentations.

Plaintiffs' complaint, although repeatedly referencing "advertising" and "misrepresentations," fails to describe them, or provide even a single example, as previously noted. "Blanket allegation[s]" that a defendants' unidentified "advertising and statements" misled consumers about a specific matter are insufficient to plead a "deceptive act or practice" under GBL § 349. *Chiste v. Hotels.com L.P.*, 756 F.Supp.2d 382, 404 (S.D.N.Y. 2010)

---

GBL § 349 *only* applies to deception of a consumer occurring *in New York*; it does not apply to out-of-state transactions. *Goshen*, 98 N.Y.2d at 325-26 (consumer deception and consumer transaction must be within State of New York); *Kaufman v. Sirius XM Radio, Inc.* 751 F.Supp.2d 681, 686 (S.D.N.Y. 2010), *aff'd*, 474 Fed.Appx. 5 (2d Cir. 2012) ("a nationwide class suing under [New York's Deceptive Acts and Practices Law] § 349 would have to be limited to those who engaged in a transaction that deceived them in New York."); *Mountz v. Global Vision Products, Inc.*, 770 N.Y.S.2d 603, 608 (N.Y. Sup. Ct. 2003) (out-of-state purchasers failed to state claim for false advertising absent allegation of any consumer action or contact occurring within New York). Accordingly, plaintiffs' current claims to represent a "nationwide" class, regardless of the location of the consumer transaction, are facially spurious. *See also Rebman*, 248 F.R.D. at 631-32 (Florida students could not represent nationwide class as other laws would govern purchases occurring in other states)*; Hutson*, 837 So.2d at 1094 (same); *People ex. rel. Spitzer v. Direct Revenue, LLC*, 2008 WL 1849855, *6 (N.Y. Sup. Ct. Mar. 12, 2008) (dismissing Attorney General's petition under GBL § 349 and other laws as to millions of unidentified transactions with consumers where, among other things, the petition failed to state where those millions of transactions occurred, as New York's statute bars claims for statutory violations based on "transactions occurring outside of New York.").

(dismissing claims that Hotels.com's "advertisements and statements" deceived consumers into believing that it "provides the lowest rate on a hotel room" in violation of GBL § 349 as those "blanket allegations" were unsupported by any examples of any such advertisements or statements and too conclusory to survive defendant's 12(b)(6) motion to dismiss); *Woods*, 2010 WL 4314313 at *14-16; *see also Sutherland v. Remax 2000*, 2008 WL 3307201, *4 (N.Y. Sup. Ct. Aug. 7, 2008) (dismissing plaintiff's deceptive business practices claim against bank where plaintiffs made only "generalized allegations of false advertising" and alleged no "specific acts of false advertising by or on behalf of [defendant]," and therefore failed to allege facts demonstrating "an act or practice that is misleading.")  With *no* examples or descriptions of any advertising or statements made by Sling on the subject of whether it would or would not display its own advertising via the Slingbox, plaintiff's claim of misleading representations by Sling is entirely conclusory and unsupported.  *Id.*

Plaintiffs do purport to quote some statements Sling made about its Slingboxes on Sling's website. CC ¶¶ 8-9.  But those partial quotes do not establish any actionable deception by Sling as a matter of law, as they say nothing whatsoever on the subject of whether Slingbox users will be *exposed to advertising*.  *See Brady*, 101 F.Supp.3d at 236-37 (where the packaging described in plaintiff's complaint did not represent that the product was safe, it did not amount to a material misrepresentation about the product's safety under GBL § 349 "as a matter of law," justifying dismissal of claim based on that packaging).

Moreover, nothing in the Complaint indicates that any statements on Sling's website (or made elsewhere) were observed by *plaintiffs* or any other person in plaintiff's putative class. That class consists, by definition, of persons who purchased Slingboxes before March 17, 2015. (CC ¶ 18.)  Referring to statements made on Sling's *current* website does nothing to apprise Sling, or this court, of what *pre-March, 2015* "advertising," (CC ¶ 29) "misrepresentations" (CC ¶ 29), and unspecified "acts and practices" (CC ¶ 30) supposedly led anyone to purchase Slingboxes prior to March 17, 2015.  The CC therefore fails to give Sling "fair notice" of what misstatements it is being sued for, and must be dismissed on that basis.  *Brady*, 101 F.Supp.3d at

234 (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993)).

**B.      Plaintiffs' Claim, If Based On Sling's Alleged Omission To Disclose That It "Would" Broadcast Sling Ads, Rather Than On False Statements Sling Made, Fails to Allege Facts Establishing That Plaintiffs Were Subjected To Materially Deceptive Conduct.**

As noted above, the Complaint does not state facts supporting any claim that Sling affirmatively misrepresented any known factual matter to anyone, at any time.  It likewise fails to state facts supporting a plausible claim by plaintiffs based on any actionable *omission*.

**1.      Plaintiffs Fail To Plead That Sling's Omission Concerned a Fact That Was "Known" During The Relevant Timeframe.**

Plaintiffs' claim, to the extent based on Sling's failure to disclose that it "would" play Sling Ads to Slingbox users (*see* CC ¶ 6.), pleads no facts supporting a plausible inference that Sling engaged in "deceptive" conduct, because it fails to plead any facts indicating that Sling *had* the allegedly undisclosed plan to advertise when plaintiffs purchased their boxes.  When a claim is based on an omission to disclose, defendant's knowledge of the omitted material fact must be pled *factually*, not conclusorily.  *Woods,* 2010 WL 4314313 at *16 (granting motion to dismiss GBL § 349 claim that defendant Maytag knew of, but did not disclose, a dangerous defect in washing machine because plaintiff failed to provide any factual information supporting inference that defendant in fact knew of the defect during the relevant time period); *cf. Tomassini v. FCA U.S., LLC*, 2015 WL 3868343, *6 (N.D.N.Y. June 23, 2015) (finding that generalized assertion that "'[Defendant] knew from the time of manufacture that the TPMS valve stems were made out of metal alloys that could not sufficiently resist corrosion'", standing alone, would be "insufficient to plausibly establish Defendant's knowledge of the alleged [] defect.").

Here, plaintiffs do not allege factually, or even *generally*, that Sling had any plan to advertise in place during the *relevant time frame* (that is, at the time of plaintiffs' *own* purchases, whenever those might have occurred).  As noted above, from all that appears in this Complaint, plaintiffs may have purchased years before Sling decided to begin such advertising.  *No* facts plaintiffs allege suggest that plaintiffs purchased Slingboxes during some window of time during

which Sling, and only Sling, knew that Sling Ads "would" be played. Plaintiffs have accordingly failed to plead that Sling failed to reveal a "known" fact.

### 2. Plaintiffs Fail To Plead Facts Showing The Materiality Of The Allegedly Omitted Information To A Reasonable Consumer.

Plaintiffs' "omission" claim founders on yet another threshold problem: they plead too few facts to support any plausible inference that Sling's alleged non-disclosure was "material" to "reasonable consumers," including any facts suggesting that the Sling Ads substantially interfere with its customers' enjoyment of content. From all that plaintiffs say about the Sling Ads, they play for only a few seconds, or can be "minimized" with a click. *Nothing* plaintiffs plead suggests the Sling Ads disrupt customers' viewing experience in some unusual or damaging manner.[7]

With no facts pled suggesting any *significant* interference with a user's viewing experience, plaintiffs' theory rests on the proposition that *any* amount or kind of advertising by Sling, however unobtrusive, and however briefly it appears, materially breaches reasonable consumers' expectations. But that implausible theory cannot withstand scrutiny.

When examining whether claims plausibly state a claim for relief, courts conduct a context-specific examination of the circumstances, using "judicial experience" and "common sense." *Woods*, 2010 WL 4314313, *2 (citing and quoting *Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009) and *Iqbal*, 556 U.S. 662.). Such an examination in this case shows plaintiffs' theory – that reasonable consumers reasonably expect "advertising-free" viewing experiences if they are not

---

[7] All that the complaint suggests is that Slingbox owners now see some unspecified ads along with the third-party content that they "really" want to see, when they view programming using their Slingboxes. But nothing suggests that this renders the Slingbox inoperable, or even materially delays or distracts from viewing of the desired third-party content. Do the Sling Ads last a five seconds, five minutes, an hour? Longer? The CC does not say. Can they be "skipped", or "minimized" or rendered invisible by going to "full screen" mode, or are they on constant display, impossible to minimize or ignore? The CC again never says. There are simply *no* facts to support any claim that the ads are so obtrusive, lengthy, or otherwise distracting that they unduly interfere with Slingbox users' ability to watch the programming they want to watch, or that suggest that they create *any* unusual degree of interference with consumers' viewing experience.

expressly told otherwise – to be entirely implausible, because it simply does not comport with common experience.

There is not only nothing unusual about displaying advertising to media consumers; that practice can fairly be described as ubiquitous. Consumers who buy magazines or newspapers, order cable television programming, or pay for the privilege of attending live sporting events, for example, are routinely subjected to advertising in addition to the entertainment they "paid" to see. Movie theatres play five to fifteen minutes of advertisements for other movies before the featured films begins, with no warning on the marquee (or by the ticket office) that that advertising will play. Plaintiffs' claim here is even weaker than a moviegoer's would be, as they allege no facts suggesting that the Sling Ads that Sling allegedly display via its software are anywhere near as lengthy, loud, or visually inescapable as such "trailers" routinely are.

Some moviegoers (and these plaintiffs) might be irritated at being "forced" to watch minutes-long ads for other movies when they are "paying" to see the featured entertainment at the theater, rather than those ads. And many readers might be frustrated that the content they paid to read in newspapers or magazines is hard to find in the clutter of full-page and half-page ads found in their newspapers and magazines. But GBL § 349 "does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (N.Y. 1995). And GBL § 349 does not create a cause of action for mere personal frustration. *Goldberg v. Manhattan Ford-Lincoln Mercury, Inc.*, 492 N.Y.S.2d 318, 322 (N.Y. Sup. Ct. 1985); *Polzer v. TRW, Inc.*, 682 N.Y.S.2d 194, 195 (N.Y. Ct. App. 1998) ("frustration" is not actionable; damages or actual pecuniary losses are needed).

Courts considering the viability of a GBL § 349 claim examine whether the defendant's conduct would violate *objectively reasonable* (e.g. "normal") consumer expectations (rather than merely subjective, unrealistic, or idiosyncratic expectations) in a way that "caused actual . . . harm." *Dimond v. Darden Restaurants, Inc.,* 2014 WL 3377105, *4-5 (S.D.N.Y. July 9, 2014) (to plead GBL § 349 claim, consumer must show that misrepresentation or omission would be

materially misleading to a reasonable consumer acting reasonably, judged under objective standard, and that it "caused actual, although not necessarily pecuniary, harm"; citing and quoting *Oswego*, 85 N.Y.2d at 26).

Claims that are not plausible when examined under the "reasonable consumer" test, applying "common sense," do not survive dismissal. In *Chiste*, for example, this court, examining GBL § 349 claims against Hotels.com, agreed that the plaintiff's "omission" claim based upon defendant's failure to advise purchasers that it was not selling its hotel rooms at its own cost, and was making a profit on each booking, was *not* likely to mislead reasonable consumers, as any assumption by plaintiff that Hotels.com was *not* earning a profit was not objectively reasonable. *Chiste*, 756 F.Supp.2d at 404-05. The court permitted only a far narrower and more specific claim (that certain wording used in defendant's contract could mislead reasonable consumers to believe that defendants were not consistently marking up the hotel taxes) to proceed to discovery. *Id*. at 405-06. Notably, the claim that survived the dismissal motion in *Chiste* was grounded in specific words the seller actually used when describing its pricing, not on a mere failure to disabuse consumers of their personal, idiosyncratic assumptions about the defendant or the offered deal. *Id.*; *see also Weinstein v. eBay*, 2011 WL 2555861, *228-29 (S.D.N.Y. June 29, 2011) (that sellers sometimes command a premium over the face value for sports tickets is a function of market economics, not deception by Stubhub, and assumption that ticket sellers would not receive such a premium not objectively reasonable).

Here, plaintiffs plead *no* statements by Sling encouraging customers to believe they would never be subjected to Sling Ads. Plaintiffs' claim is instead premised on a theory that consumers who are not expressly *advised* by a seller that they will be "advertised to" in the course of enjoying a paid-for entertainment experience reasonably assume that they will *not* be "advertised to" by the seller in the course of such an entertainment experience. But that cannot survive scrutiny using "common sense" and "judicial experience." [8]

---

[8] This is not to say that "pure omissions" are *never* actionable under GBL § 349. They can be actionable when they involve "material" deception judged under a "reasonable consumer" (footnote continued)

The information allegedly omitted by Sling – that its own ads may be displayed before or "alongside" video content viewed by Slingbox owners – simply does *not* fall into a category of information that consumers reasonably expect to be told about or that consumers normally *are* told about at the time of sale, as previously noted. "Unsolicited" advertising, with no prior "warning" to the consumer, is simply too commonplace. Nor is the fact that one will be "advertised to" clearly "material" to consumers desiring to watch movies or other entertainment. Millions upon millions of American consumers willingly pay for advertising-laden entertainment and other "third-party" content every day, week, and month. And they then come back for more. Some amount of advertising, as such, is thus *not,* in fact, actually "material" to reasonable consumers of such content, indicating that plaintiffs' complaint arises from their idiosyncratic preferences, rather than the well-grounded consumer expectations that GBL § 349 exists to protect. *Goldberg*, 492 N.Y.S.2d at 126-127 ("time-honored" practice of "nibbling away at the customer's initial expectations" and subjecting them to "long periods of waiting" not actionable as deceptive practice, however irritated plaintiff may have been at the waste of his time.).

As plaintiffs have pled *no* facts "nudging" these claims in the direction of plausibility (such as that the Sling Ads are so extraordinarily disruptive or lengthy, compared to other advertising consumers routinely see, that reasonable consumers would not expect to be subjected to it without being warned about it at the time of their purchase), their claims should be dismissed for failure to satisfactorily plead "material" deception.

### C. Plaintiffs Do Not Plead Facts Showing Causation of Damage.

To be actionable under GBL § 349, deceptive acts or practices must not only be "material," they must cause actual damage. An omission or misrepresentation alone, in the absence of caused injury, is not actionable. *Weinstein*, 2011 WL 2555861, *229; *Dimond*, 2014

---

standard. Accordingly, courts in this and other jurisdictions do allow consumer deception claims involving failures to disclose facts that would clearly be material to reasonable consumers buying those particular products, such as *known* defects that could cause the product to explode when normally operated, provided some facts pled in the complaint plausibly suggest that the defendant was aware of the defect at the time. *See, e.g., Woods*, 2010 WL 4314313.

WL 3377105, *4-5 (omission alone not actionable; must cause actionable damage). Thus, plaintiffs, to state a claim under GBL § 349, must show that Sling's alleged "deception" caused them actual damage. A failure to plead facts showing that the defendant's "material deceptive act caused the injury" makes a GBL § 349 claim subject to dismissal. *Gale v. International Business Machines Corp.*, 781 N.Y.S.2d 45, 47 (N.Y. Ct. App. 2004) (absence of facts showing misleading statements led to plaintiff's own purchase of hard drive merited dismissal of GBL § 349 claim for failure to plead causation element of claim).

As discussed earlier, in the context of plaintiffs' standing, plaintiffs in this case do not plead facts showing that they suffered distinct cognizable loss *caused by* a deceptive misrepresentation or omission by Sling. The concrete injury they identify is the purchase of Slingboxes: they generally aver that they and other class members would not have purchased or would not have paid as much if they had "known" about the Sling Ads. CC ¶ 16. But, like the plaintiff in *Gale*, they refer to misrepresentations without saying, anywhere, that *they* were exposed to or influenced by them. *Gale*, 781 N.Y.S.2d at 47. And, while they reference a failure to disclose Sling's "plans" to launch advertising, they never say that their own purchases occurred after such "plans" were made and known by Sling. Whether their own purchases were "caused" by any material deception by Sling (as opposed to a mere failure to predict the future) is, inappropriately, thus left entirely to surmise. *See, e.g., Woods*, 2010 WL 4314313, *16 (claim against Maytag regarding failure to disclose defect could not lie where no facts were pled showing that Maytag knew of the defect).

After *Iqbal* (and, indeed, even before *Iqbal*), critical elements of a claim must be *factually* supported, so as to lead to a plausible inference that plaintiffs can satisfy them; they cannot be a mere possibility or left to speculation. *Iqbal*, 556 U.S. at 678-679. And "formulaic" or conclusory recitals can be and should be disregarded. *Id.* at 678-81. Accordingly, to survive a 12(b)(6) motion, the plaintiffs must plead *facts* showing that they, personally, suffered the type of injury that is compensable under the cause of action they assert, and that was *caused* by defendant's wrongful conduct.

Since plaintiffs nowhere plead that they purchased their Slingboxes for a premium *after* being exposed to actionable misrepresentations, or *after* Sling knew that Sling Ads would be displayed, their pleading does not come close to satisfying plaintiffs burden of pleading the critical element of "causation." *See, e.g., Sutherland*, 2008 WL 3307201, *4 (dismissing deceptive practices causes of action against Wells Fargo Bank based on plaintiff's failure to specify "the specific acts of false advertising by Wells", to allege that plaintiff "observed or was influenced by any advertisements" by Wells, to allege "what misrepresentations Wells Fargo actually made" that "could be likely to mislead a reasonable consumer," and to allege facts showing "that such acts or practices were the cause of Sutherland's alleged damages."); *Gale*, 781 N.Y.S.2d at 47 (dismissing GBL §349 claims where complaint did not assert that plaintiff saw any of the allegedly deceptive statements about his hard drive so as to show a connection between the alleged deceptive act and his injury); *see also Douyon v. N.Y. Medical Health Care, P.C.*, 894 F.Supp.2d 245, 265-66 (E.D.N.Y. 2012) (granting defendant's summary judgment motion respecting GBL § 349 claim on causation grounds where plaintiff had not read the correspondence allegedly containing the misleading information, and therefore could not have been injured by it).[9]

### D. Slingbox Owners' Irritation or Surprise (If Any) At Being Exposed To The Sling Ads Is Not Cognizable Injury Under GBL § 349.

Plaintiffs may argue that it is irrelevant whether their Slingbox *purchases* resulted from deceptive conduct by Sling, because they and everyone else in the "installed user base" have a *different* injury that Sling has "caused":  they are now being "exposed" to or being "forced" to watch some advertising they do not care to see, without their consent, and without any payment. (*See* CC at ¶¶ 11, 12, 14.)

---

[9] This makes the claim dismissible under Rule 12(b)(6) for failure to factually allege a critical element of plaintiffs' claim, as well as under Rule 12(b)(1), as we noted above. *Brady*, 101 F.Supp.3d 217, 229 (dismissing under Rule 12(b)(1) claims asserted by plaintiff who had not seen and therefore could not have been influenced by particular defendant's endorsements, as the plaintiff's purchase pre-dated the defendant's allegedly misleading endorsement).

If this is their theory of recovery (and it may be, from their pleading), then plaintiffs clearly have no GBL § 349 claim at all. A GBL § 349 claim cannot lie unless the deceptive conduct in question causes distinct, actual harm. *Dimond*, 2014 WL 3377105, *9. While "actual harm" need not be "pecuniary," frustrating a consumer is not actionable under GBL § 349. *Goldberg*, 492 N.Y.S.2d at 322 (GBL § 349 does not make "indignation," "disappointed expectations," or "frustration" with a seller's unexpected behavior actionable. GBL § 349 requires damages or actual loss caused by the seller's deceptive conduct, and wasting a customer's time is not a substitute for such damage); *Polzer*, 682 N.Y.S.2d at 195.

Plaintiffs here complain that the "installed user base" was not warned about the launch of the Sling Ads (that is, they were deprived of *information*), but they do not allege that they or others in the installed user base have had to *spend any extra money* (for example, to repair the Slingboxes), or has incurred any other form of *damage* (such as property damage or personal injury), resulting from Sling's not advising existing box owners of its "plan" to run the Sling Ads.

If something bad happened to the "installed user base" as a result of Sling's not disclosing that the Sling Ads would begin appearing (other than personal irritation), plaintiffs provide no clue as to what that bad thing was. They therefore have not pled the type of injury that consumer protection statutes (including GBL § 349) exist to redress, and their claims should be dismissed. *Goldberg*, 492 N.Y.S.2d at 322 (New York's consumer protection law simply is not a tool for consumers to express their frustration with business practices that do not cause them actual damage, and it "does not empower . . . the courts to penalize whatever trade practice they may look at askance."); *Polzer*, 682 N.Y.S.2d at 195 (affirming summary judgment in favor of defendants on consumers' GBL § 349 claim based on alleged "enablement" of imposter fraud by defendants who allegedly issued credit cards to third parties impersonating the consumers, as plaintiffs had no demonstrated damages or losses flowing from deceptive or misleading conduct directed toward them; noting that "[a]n action does not compensate for 'frustration.'"); *Hammond v. Bank of NY Mellon Corp.*, 2010 WL 2643307, *12-13 (S.D.N.Y. June 25, 2010) (subjective

fear of identity theft and the time expended to mitigate that risk are not "actual damage" compensable under state consumer protective statutes, including New York's).[10]

## CONCLUSION

Plaintiffs' apparent frustration at seeing Sling Ads, without more, is simply not a basis, under New York law, for allowing their claims to proceed. Absent factual averments showing that they suffered actual *damages*, such as a loss of money, because of a material deceptive omission or misrepresentation by Sling, plaintiffs cannot bring a claim for relief against Sling under GBL § 349. Since plaintiffs do not plead that they either have experienced or will experience any such cognizable damage, and since they have no personal right to claim the protection of such other jurisdiction's laws, their claims, and this action, must be dismissed.[11]

DATED: January 22, 2016

Respectfully submitted,

*/s/Richard R. Patch*

Richard R. Patch*
Susan K. Jamison*
Katharine T. Van Dusen*
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94104-5500
Telephone:    (415) 391-4800
Email:         ef-rrp@cpdb.com
              ef-skj@cpdb.com
              ef-ktv@cpdb.com

(*Admitted *Pro Hac Vice*)

---

[10] The same would be true if the case were governed by California or Florida law. California's UCL and FAL require that plaintiffs have lost "money or property" to bring claims under each of its consumer statutes; its CLRA requires "damage" and not the mere exposure to a prohibited act; and Florida, like New York, requires actual damage, and not just frustration, disappointed expectations, or wasted time. *Rollins, Inc. v. Butland*, 951 So.2d 860, 873(Fla. Dist. Ct. App. 2006) (actual loss and not just "feelings of disappointment" is necessary for Florida statutory consumer deception claim to proceed); Cal. Bus. & Prof. C. § 17204 (UCL), 17535 (FAL); *Meyer v. Sprint Spectrum, L.P.*, 45 Cal.4th 634, 641 (2009).

[11] Again, courts in the only other two states with some potential connection to plaintiffs or Sling (California and Florida), would themselves tell plaintiffs that they should proceed under New York's law, and not theirs, in their circumstances. *See, e.g.*, *Hutson*, 837 So.2d at 1094 (Florida's statute exists for the protection of in-state consumers, and other states can protect their own residents); *Frenzel*, 76 F.Supp.2d at 1007-10.

Leigh R. Lasky
LASKY, LLC
100 Park Avenue, 16th Floor
New York, NY  10017
Telephone:      (212) 984-1853
Email:          lasky@laskylegal.com

*Attorneys for Defendant*
*SLING MEDIA, INC.*