UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
|  | x :| |
| IN RE SLING MEDIA SLINGBOX ADVERTISING LITIGATION | : : : | Civ. Action No. 1:15-cv-05388-GBD |
|  | : | **REPLY MEMORANDUM OF LAW IN** |
| This Document Relates To:  All Actions | : : | **SUPPORT OF SLING MEDIA, INC.'S MOTION TO DISMISS** |
|  | x |  |

14908.002 3394390v4

**TABLE OF CONTENTS**

OVERVIEW ..................................................................................................................................1

    I.    NEITHER THE COMPLAINT NOR THE OPPOSITION CONTAINS FACTS TO SUPPORT STANDING. ...........................................................................2

        A.    Nothing In The Complaint Shows That Plaintiffs Purchased Slingbox Units During The Relevant Time Period. ........................................2

            1.    Plaintiffs have no standing to claim they were injured at the time of purchase. ................................................................................2

            2.    Plaintiffs have no standing to claim that their viewing experience changed. .................................................................................3

        B.    Plaintiffs Do Not Allege That Sling Ads Were Added To The Display They Use To Watch Television Programming. ................................3

    II.    PLAINTIFFS HAVE NO BREACH-OF-CONTRACT CLAIMS. ...........................4

    III.    NEW YORK LAW APPLIES, BECAUSE THE PLAINTIFFS EACH PURCHASED THEIR SLINGBOX UNITS HERE. ......................................................6

        A.    A Simple Four-Step Analysis Concludes That New York Law Applies To Plaintiffs' Claims. ..........................................................................6

        B.    Plaintiffs Have Waived Any Claim Under The Laws Of Other Jurisdictions. ..................................................................................................7

    IV.    THE ADDITION OF SOME NOMINAL AMOUNT OF THIRD-PARTY ADVERTISING DOES NOT GIVE RISE TO A CLAIM UNDER GBL § 349. .................................................................................................................................7

        A.    Plaintiffs Cannot Identify A Specific Promise That Would Have Led Slingbox Purchasers To Expect Their Viewing Experience To Remain Free From Advertising. ......................................................................8

        B.    Plaintiffs Do Not Allege Any Facts That Would Give Rise To A Reasonable Inference That Sling Formed A Plan To Introduce Sling Ads Prior To Plaintiffs' Purchase. .........................................................8

        C.    Nothing In The Opposition Suggests That Sling Ads Would Be Material To A Reasonable Consumer. ............................................................9

        D.    Plaintiffs Are Frustrated, But They Have Not Incurred Damages. ...............10

CONCLUSION ............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*Acoustics, Inc. v. Trepte Construction Co.*,
   14 Cal.App.3d 887 (1971) ...............................................................................................5

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011)............................................................................................2

*Aschcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................................4

*Comprehensive Habilitation Serv. v. Commerce Funding, Inc.*,
   2009 WL 935665 (S.D.N.Y. Apr. 7, 2009).....................................................................5

*Dimond v. Darden Restaurants, Inc.*,
   2014 WL 3377105 (S.D.N.Y. July 9, 2014) ...................................................................9

*Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.*,
   414 F.3d 324 (2d Cir. 2005)............................................................................................6

*Goldberg v. Manhattan Ford Lincoln-Mercury, Inc.*,
   492 N.Y.S.2d 318 (1985)...............................................................................................10

*In re Grand Theft Auto Video Game Consumer Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008) ....................................................................................7

*Gutierrez v. Wells Fargo & Co.*,
   622 F.Supp.2d 946 (N.D. Cal. 2009) .............................................................................6

*Gutierrez v. Wells Fargo Bank NA*,
   704 F.3d 712 (9th Cir. 2012) ..........................................................................................6

*Guz v. Bechtel National, Inc.*,
   24 Cal.4th 317 (2000) .....................................................................................................5

*Hangarter v. Paul Revere Life Ins. Co.*,
   236 F.Supp.2d 1069 (N.D. Cal. 2002) ...........................................................................6

*Hangarter v. Provident Life & Acc. Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ..........................................................................................6

*Johnson v. Nextel Communications, Inc.*,
   780 F.3d 128 (2d. Cir. 2015)...........................................................................................6

*Lewis Tree Serv. v. Lucent Techs.*,
   239 F.Supp.2d 322 (S.D.N.Y. 2002)..............................................................................5

*Mosely v. Vitalize Labs*,
   LLC, 2015 WL 5022635 (E.D.N.Y. Aug. 24, 2015) ..................................................................7

*Notrica v. State Comp. Ins. Fund*,
   70 Cal.App.4th 911 (1999) ......................................................................................................6

*Rufini v. CitiMortgage, Inc.*,
   227 Cal.App.4th 299 (2014) ....................................................................................................6

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F.Supp.2d 942 (S.D.Cal. 2012) .........................................................................................6

*Tomassini v. FCA US LLC*,
   2015 WL 3868343 (N.D.N.Y. June 23, 2015) .........................................................................9

*In re Whole Foods Market Group Inc. Overcharging Litig.*,
   --- F.Supp.3d ----, 2016 WL 852796 (S.D.N.Y. March 1, 2016) ........................................2, 4

*Woods v. Maytag Co.*, No.,
   2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) .......................................................................2, 3

**Statutes**

Cal. Civ. Code § 1761(e) ...............................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ............................................................................................................2, 10

Fed. R. Civ. P. 12(b)(6) ............................................................................................................4, 10

## **OVERVIEW**

The Court must reject Plaintiffs' position that its skeletal complaint suffices to allege viable claims arising from Sling's introduction of third-party advertising. The Slingbox units owned by the Plaintiffs permit them to watch television programming on multiple devices. Plaintiffs assert consumer-protection claims based on allegations that consumers see third-party advertising when they view programming on at least some of these devices (the "Sling Ads").

Plaintiffs' opposition to Sling's motion to dismiss obfuscates but does not alter the reasons this Court should grant Sling's motion:

1)  Under federal law, named plaintiffs in a class action must have standing to assert their individual claims. The complaint alleges that Sling knew—but did not tell its customers—that it planned to introduce third-party advertising. This is not a viable claim. But in any event, in order to have standing to assert this claim, a plaintiff must have purchased his Slingbox unit *after* Sling formed the plan to begin advertising, but before advertising was apparent. None of the Plaintiffs alleges that he purchased his Slingbox unit during this window.

2)  By its terms, the contractual California choice-of-law provision that Plaintiffs seek to enforce does not cover noncontractual claims. Even if Plaintiffs could assert a breach-of-contract claim—they have not and cannot—their consumer-protection claims still would not fall within the scope of the choice-of-law provision. The claims are subject to a choice-of-law analysis which dictates that New York (and not California) law applies.

3)  Under New York consumer-protection laws, an omission is only actionable if it is material and causes damage. Mere annoyances or frustration are not actionable. Plaintiffs do not allege that their ability to watch television programming has been impaired or that they have had to spend money or time to alter or repair their Slingbox units; Plaintiffs instead allege irritation at the existence of third-party advertising. As Plaintiffs have alleged no facts to show that third-party advertising is material or has caused actual harm, Plaintiffs have failed to state a claim under New York law.

Plaintiffs spend much of their opposition conceptualizing a breach-of-contract claim that does not appear in the complaint and is not supported by facts.  Plaintiffs' reason for doing so is clear enough:  Plaintiffs hope to represent a nationwide class under California law, and they now realize a breach-of-contract claim is the only avenue by which they might achieve this goal.  Unfortunately for Plaintiffs, the complaint does not allege a breach of contract.  Nor does the opposition describe in any way how Sling's End User License Agreement was breached.

Plaintiffs' focus on a nonexistent contract claim should not distract the Court from the key issues that should lead the Court to grant Sling's motion to dismiss.

## I. NEITHER THE COMPLAINT NOR THE OPPOSITION CONTAINS FACTS TO SUPPORT STANDING.

Plaintiffs' abstract allegations are inadequate to show their standing, and the Court should dismiss the complaint under Fed. R. Civ. P. 12(b)(1).  Plaintiffs must allege facts that affirmatively and plausibly suggest they have standing to sue.  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  This remains true even if, as Plaintiffs argue, some of the relevant facts may be better known to the defendant.  *See Woods v. Maytag Co.*, 2010 WL 4314313, at *16 (E.D.N.Y. Nov. 2, 2010) (dismissing GBL § 349 complaint because plaintiff did not adequately allege defendant's knowledge of the defect).  Standing is lacking when a plaintiff alleges only the possibility he was injured.  *In re Whole Foods Market Group Inc. Overcharging Litig.*, --- F.Supp.3d ----, 2016 WL 852796, *9-*10 (S.D.N.Y. March 1, 2016) (shoppers failed to show they purchased food that was overpriced; the possibility that shoppers had not purchased an overpriced product defeated standing under GBL § 349).

### A. Nothing In The Complaint Shows That Plaintiffs Purchased Slingbox Units During The Relevant Time Period.

#### 1. Plaintiffs have no standing to claim they were injured at the time of purchase.

Plaintiffs allege that Sling misrepresented or omitted facts when it failed to inform Plaintiffs, prior to Plaintiffs' purchase, that Sling intended to add third-party advertising.  In order to have standing to bring this claim, Plaintiffs must allege that they purchased *after* Sling formed

its plan to begin advertising, but *before* advertising was apparent.  Plaintiffs do not allege that they purchased in this time frame.  According to Plaintiffs, it would be impossible to make this allegation, because Plaintiffs do not know when the plan to begin advertising was formed.  But Plaintiffs must allege more than mere conclusions to support their claim that Sling knew, but failed to inform consumers, that third-party advertising would be added.  *Woods,* 2010 WL 4314313, at *16.  Plaintiffs must allege that Sling had knowledge of the alleged "defect"—that third-party advertising would be added in the future—at the time Plaintiffs purchased their Slingbox units.  Plaintiffs do not make this allegation and are thus missing a crucial fact necessary for their standing.

### 2. Plaintiffs have no standing to claim that their viewing experience changed.

Plaintiffs also argue that regardless of when Sling formed its plan to begin advertising, Plaintiffs were injured when Sling began advertising and therefore changed Plaintiffs' viewing experience.  Putting aside for a moment the substantive problems with this claim, including the fact that Plaintiffs allege their injury occurred at the time of purchase (Compl. ¶ 16), Plaintiffs still have not alleged facts sufficient to support their standing.  To assert that Sling Ads negatively affected Plaintiffs' viewing experiences, Plaintiffs must allege that they purchased their Slingbox units before Sling introduced the Sling Ads; otherwise, Plaintiffs' viewing experience did not change.  The complaint identifies the date that Sling added third-party advertising: late 2014.  (Compl. ¶ 4.)  Plaintiffs do not allege that they purchased their Slingbox units before "late 2014" and in fact attempt to assert claims on a behalf of a class who purchased prior to March 17, 2015.  (Compl. ¶ 3.)  Absent factual allegations showing that Plaintiffs purchased before Sling Ads began, Plaintiffs lack standing to bring a claim that their viewing experience changed.

### B. Plaintiffs Do Not Allege That Sling Ads Were Added To The Display They Use To Watch Television Programming.

It is not merely the absence of dates that defeats Plaintiffs' standing; it is also the absence of an allegation that Plaintiffs have ever seen a Sling Ad.  Plaintiffs allege that a consumer can

use a Slingbox to view television programming "on a remote television, computer, tablet, or mobile device[.]"  (Opp. at 9, citing Compl. ¶ 9.)  Plaintiffs do not allege that Sling Ads appear no matter how a customer views television programming—whether on a television, computer, tablet, or mobile device—which gives rise to the possibility that Sling Ads appear only when a customer views programming on his or her mobile device but not when a customer views that same programming on a television.  Plaintiffs never allege how they themselves view programming.  (Compl. ¶¶ 5-7.)  Plaintiffs merely allege that their use of Slingbox units is "subject to" Sling Ads.  This allegation is insufficient—nowhere do Plaintiffs claim to have viewed Sling Ads when using a Slingbox, and the possibility exists that Plaintiffs have never actually seen a Sling Ad.  *In re Whole Foods Market Group*, 2016 WL 852796, *8 (plaintiffs do not have standing when the possibility exists that they were not affected by the complained practice, even if the odds suggest that plaintiffs probably were affected.)  Plaintiffs have not demonstrated that they were affected by Sling's conduct, so the Court lacks standing to hear Plaintiffs' claims.

## II. PLAINTIFFS HAVE NO BREACH-OF-CONTRACT CLAIMS.

If the Court determines that Plaintiffs have adequately alleged their standing, the Court should nevertheless grant Sling's motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs devote the bulk of their opposition to discussing a claim for breach of the duty of good faith and fair dealing.  The complaint, however, clearly asserts consumer-protection claims, not contract claims.  Plaintiffs now argue that their claims "stem from [Sling's] bad faith actions to deny Plaintiffs' rights to use the Slingbox system as bargained for under the [End User License Agreement]."  (Opp. at 12.)  Plaintiffs further argue that their claims "fall directly within the scope of the duties and benefits of the parties' End User License Agreements."  (Opp. at 13.)

The Plaintiffs' arguments suggest a complete abandonment of their original complaint.  But, again, Plaintiffs' purpose is clear:  they seek to apply a contractual choice-of-law provision to their claims.  That choice-of-law provision provides that "this Agreement will be governed by

and construed in accordance with the laws of the State of California[.]"  (Doc. #33-1 at 6.)  As Plaintiffs now realize, this choice-of-law provision only applies to breach-of-contract claims.  *See, e.g. Lewis Tree Serv. v. Lucent Techs.*, 239 F.Supp.2d 322 (S.D.N.Y. 2002) (parties' choice-of-law clause applied only to common-law contract claims, not statutory or fraud claims).  Even where a plaintiff raises both contract and noncontract claims, the Court only applies the contractual choice-of-law provision to the contract claims and engages in a conflicts-of-law analysis to determine what law governs the remaining, noncontractual claims.  *Comprehensive Habilitation Serv. v. Commerce Funding, Inc.*, 2009 WL 935665, *10 (S.D.N.Y. Apr. 7, 2009).

  The Court should not indulge Plaintiffs' attempt to reframe their statutory claims into claims for breach of contract.  The complaint itself does not allege any of the elements of such a claim:  that the parties had an agreement, Sling failed to do something the contract required, or that Plaintiffs were harmed by that failure.  *See, e.g. Acoustics, Inc. v. Trepte Construction Co.*, 14 Cal.App.3d 887, 913 (1971) (setting forth the elements of a breach-of-contract claim).  Nowhere in the complaint do Plaintiffs allege an express or implied contractual duty to refrain from advertising.

  A claim for breach of the duty of good faith and fair dealing fares no better.  The opposition does not identify a specific contractual benefit that Plaintiffs have not received.  *See Guz v. Bechtel National, Inc.*, 24 Cal.4th 317, 349-50 (2000) (the duty of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.")  Plaintiffs have not even alleged that the software on their Slingbox units was updated or otherwise altered (the Sling Ads appear on a viewing screen, not on the box itself).  Even if the Court were to consider the End User License Agreement Plaintiffs attach to their opposition, the Agreement contains no promises that television programming will look a certain way or that consumers will not see third-party advertisements; the Agreement says nothing at all about advertising.  Plaintiffs cannot co-opt the duty of good faith and fair dealing to impose upon Sling a new, substantive duty to refrain from advertising.

As Plaintiffs have no claim for breach of the duty of good faith and fair dealing, the Court need not consider whether a breach of this duty also gives rise to a claim under California's consumer-protection laws.  But even if Plaintiffs had a contractual claim, a claim under California consumer-protection laws would not follow.  None of the cases Plaintiffs cite suggest that a breach of an implied contractual covenant automatically gives rise to a consumer-protection claim under California law.[1]  No grounds exist for the Court to apply the contractual choice-of-law provision to Plaintiffs' consumer-protection claims.

### III. NEW YORK LAW APPLIES, BECAUSE THE PLAINTIFFS EACH PURCHASED THEIR SLINGBOX UNITS HERE.

Plaintiffs concede by omission that California law could only apply to their claims if the contractual choice-of-law provision controls.  Nowhere in their opposition do Plaintiffs dispute that, assuming the contract provision does not apply, New York consumer-protection laws would govern their claims.

#### A. A Simple Four-Step Analysis Concludes That New York Law Applies To Plaintiffs' Claims.

For clarity, Sling summarizes here the reasons the Court should apply New York rather than California law to Plaintiffs' claims.  *See Johnson v. Nextel Communications, Inc.*, 780 F.3d 128, 140-42 (2d. Cir. 2015) (setting forth a choice-of-law analysis for plaintiffs in a putative class action).  **Step one**:  Consumer-protection claims are outside the scope of the contractual choice-of-law provision.  *See e.g. Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.*, 414 F.3d 324, 335 (2d Cir. 2005); *see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F.Supp.2d 942, 964-65 (S.D.Cal. 2012) (holding that

---

[1] *Gutierrez v. Wells Fargo & Co.*, 622 F.Supp.2d 946, 953 (decision reversed on appeal, *Gutierrez v. Wells Fargo Bank NA*, 704 F.3d 712 (9th Cir. 2012)); *Rufini v. CitiMortgage, Inc.*, 227 Cal.App.4th 299, 310 (2014) (consumer-protection claim based on underlying allegations, including allegations of fraud and unfair practices); *Notrica v. State Comp. Ins. Fund*, 70 Cal.App.4th 911, 945 (1999) (consumer-protection claim based on alleged unfair conduct).  Cal. Civ. Code § 1761(e) (defining "transaction"); *Hangarter v. Paul Revere Life Ins. Co.*, 236 F.Supp.2d 1069, 1109 (N.D. Cal. 2002) (consumer-protection decision reversed on appeal, *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021-22 (9th Cir. 2004)).

California consumer-protection claims did not fall within choice-of-law provision in gaming company's terms of service).  **Step two**:  either New York or California law could apply to the claims, because Plaintiffs purchased their Slingbox units in New York but Sling's headquarters are in California.  **Step three**:  substantive differences exist between New York and California law, including, briefly, the availability of damages instead of equitable relief and the scope of claims that can be alleged.  **Step four**:  because an actual conflict exists, and because Plaintiffs allege tortious behavior, the Court should apply the law of the jurisdiction with the greater interest in the action; typically, the place of purchase in consumer cases.  *See, e.g., In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 149-50 (S.D.N.Y. 2008) (under New York law, state where consumer purchased video game has greatest interest).  Here, Plaintiffs allege that they purchased their Slingbox units in New York.  Thus, New York law applies.

Plaintiffs neither question nor dispute this analysis.

### B. <u>Plaintiffs Have Waived Any Claim Under The Laws Of Other Jurisdictions.</u>

The complaint's fourth cause of action contains consumer-protection claims under the laws of fifty jurisdictions.  Sling moves to dismiss all non-New York consumer-protection claims in this count, because Plaintiffs assert no connection between themselves and any state other than New York.  *Mosely v. Vitalize Labs*, LLC, 2015 WL 5022635, *8-*9 (E.D.N.Y. Aug. 24, 2015) (dismissing state law claims on behalf of unnamed class members where no named plaintiff had standing to assert the claims).  Nowhere do Plaintiffs argue that the non-New York claims in this count should go forward.  Plaintiffs have voiced no objection to their dismissal, and as a matter of law Plaintiffs cannot assert these claims.

### IV. <u>THE ADDITION OF SOME NOMINAL AMOUNT OF THIRD-PARTY ADVERTISING DOES NOT GIVE RISE TO A CLAIM UNDER GBL § 349.</u>

New York law applies to Plaintiffs' claims, but it does not entitle them to relief.  The GBL § 349 claim lacks key allegations, including:  (1) facts to support the conclusion that Sling's "advertising and statements" misled consumers and whether Plaintiffs themselves viewed any allegedly misleading "advertisements" or "statements" before purchasing their Slingbox units;

(2) facts to support an inference that Sling had knowledge of the alleged defect; (3) facts to support a conclusion that Sling Ads would be material to a consumer; and (4) facts suggesting that the Sling Ads have caused Plaintiffs actual damage.  Any one of these missing pieces, standing alone, would cause Plaintiffs' GBL § 349 claim to fail.  Taken together, the missing facts show that Plaintiffs have not stated a viable consumer-protection claim.

> A. **Plaintiffs Cannot Identify A Specific Promise That Would Have Led Slingbox Purchasers To Expect Their Viewing Experience To Remain Free From Advertising.**

According to the opposition, Sling "engaged in a deceptive or misleading practice by reneging on its agreements with consumers by forcing them to watch its advertisements in order to use their Slingbox systems."  (Opp. at 17.)  Even this explanation fails to identify any agreement or promise by Sling that consumers would not have to watch advertising.  The End User License Agreement attached to the opposition contains no such promise, and no other allegation suggests that Sling ever represented to consumers that their viewing experience would remain advertising-free.  Nor have Plaintiffs put forth in their complaint or opposition any statements or representations that they personally relied on when they purchased their Slingbox units.  Based on the lack of factual support, the Court should dismiss any claim arising from an allegation that Sling affirmatively misrepresented whether users would ever have to see third-party advertising when viewing television programming.

> B. **Plaintiffs Do Not Allege Any Facts That Would Give Rise To A Reasonable Inference That Sling Formed A Plan To Introduce Sling Ads Prior To Plaintiffs' Purchase.**

Sling cannot have wrongfully failed to disclose a fact that Sling itself did not know.[2]  Nothing in the complaint or opposition gives rise to a plausible inference that Sling had knowledge of its plans to begin displaying third-party advertising before Plaintiffs purchased

---

[2] For example, Sling could not have disclosed to a purchaser in 1995 that mobile apps might someday include third-party advertising.  A purchaser in this era would not have expected to view television programming on a smartphone or tablet at all, with or without advertising—these devices were over a decade away from invention.

their Slingbox units.  *See Tomassini v. FCA US LLC*, 2015 WL 3868343, *6-*7 (N.D.N.Y. June 23, 2015) (requiring plaintiffs to allege sufficient circumstantial facts that together suggested defendant was aware of a complained defect).  Here, Plaintiffs have not pled any circumstantial facts—or any facts of any kind at all—to support a conclusion that Sling knew it would introduce Sling Ads at any time prior to Plaintiffs' purchase of their Slingbox units.  Because these key facts are missing, the Court should dismiss any claim arising from an allegation that Sling failed to disclose a fact within its knowledge.

### C. Nothing In The Opposition Suggests That Sling Ads Would Be Material To A Reasonable Consumer.

Plaintiffs' primary claim appears to be based on an omission.  Somehow, according to Plaintiffs, Sling had a legal duty to inform customers that, at some point in the future, they would see third-party advertising in addition to television programing.  Plaintiffs fail to explain how this fact would be material to a reasonable consumer.

Nowhere in the complaint or in the opposition do Plaintiffs describe the Sling Ads in any detail.  There is nothing suggesting that the Sling Ads are somehow extraordinarily disruptive, lengthy, or otherwise outside the norm consumers see every day when watching television or visiting a web page.  Nothing in the complaint suggests it would be reasonable for a consumer of a television product to expect—without an express promise—that a web page or other display on which they view television programming would never contain advertising.  *See, e.g., Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, *4-5 (S.D.N.Y. July 9, 2014) (allegation that restaurant omitted beverage prices in menus was not material to consumers under GBL § 349).

It is of no help to Plaintiffs that some media services, like Pandora or Hulu, offer an advertising-free experience at a premium price.  (Opp. note 4.)  This shows that reasonable consumers know they will pay a premium for a promise not to see advertising.  The complaint does not allege that Sling made such an express promise or that Plaintiffs paid such a premium.

D.  **Plaintiffs Are Frustrated, But They Have Not Incurred Damages.**

Plaintiffs have not alleged any damages associated with any alleged failure to disclose. Plaintiffs' opposition states only that that the "value" of their Slingbox systems was diminished. But Plaintiffs allege no facts to support this conclusion:  for example, Plaintiffs fail to allege that they can no longer use their Slingbox units to watch television programming, or that Plaintiffs now face a repair cost for their Slingbox units.  Plaintiffs' allegations make clear that they are frustrated about the Sling Ads, but this frustration is not actionable.  *Goldberg v. Manhattan Ford Lincoln-Mercury, Inc.*, 492 N.Y.S.2d 318, 322 (1985) (a frustrated plaintiff who feels his time has been wasted has not stated a claim under GBL § 349).  Because no damages are alleged, Plaintiffs' claims should be dismissed.

## CONCLUSION

The Court should dismiss this case under Fed. R. Civ. P. 12(b)(1), as Plaintiffs have not alleged facts adequate to support their standing to bring any of their claims.  The complaint does not establish that Plaintiffs have been affected in any way by the introduction of Sling Ads.  Alternatively, the Court should dismiss the claims under Fed. R. Civ. P. 12(b)(6), because Sling had no duty to disclose to Plaintiffs that it would begin introducing Sling Ads and, in any event, Plaintiffs have not suffered actionable damage.  Plaintiffs complain in generalities, but lack of specificity dooms their claims.  Sling requests that the Court grant its motion to dismiss.

DATED:  March 16, 2016              Respectfully submitted,

 */s/Richard R. Patch*
Richard R. Patch*
Susan K. Jamison*
Katharine T. Van Dusen*
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA  94104-5500
Telephone:     (415) 391-4800
Email:          ef-rrp@cpdb.com
                ef-skj@cpdb.com
                ef-ktv@cpdb.com

(*Admitted *Pro Hac Vice*)

>
> Leigh R. Lasky
> LASKY, LLC
> 100 Park Avenue, 16th Floor
> New York, NY  10017
> Telephone:  (212) 984-1853
> Email:  lasky@laskylegal.com
>
> *Attorneys for Defendant*
> *SLING MEDIA, INC.*